UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYNTHIA WILLIAMS,

        Plaintiff,                            Civil Action No. 15-11884
                                             Honorable Gerald E. Rosen
v.                                                    Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [14, 17]**

Cynthia Williams ("Williams") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). (Docs. #2, 14, 17).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Williams is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [17] be DENIED, Williams' motion for summary judgment [14] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.     REPORT**

   **A.     Procedural History**

On September 21, 2012, Williams filed the instant application for SSI, alleging a disability onset date of January 1, 2003.[1]  (Tr. 49-50, 100, 125).  Williams later amended her onset date to September 21, 2012.  (Tr. 37, 178).  Williams' claim was initially denied on December 17, 2012.  (Tr. 62).  Thereafter, Williams filed a timely request for an administrative hearing, which was held on December 11, 2013, before ALJ Timothy J. Christensen.  (Tr. 34-48).  Williams, who was represented by attorney Elizabeth Blount, testified at the hearing, as did vocational expert James Fuller.  (*Id.*).  In a written decision dated February 14, 2014, the ALJ determined that Williams is not disabled.  (Tr. 20-29).  On March 26, 2015, the Appeals Council denied review.  (Tr. 1-5).  Williams filed for judicial review of the final decision on May 26, 2015.  (Doc. #1).

   **B.     Framework for Disability Determinations**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

---

[1] Williams previously filed applications on October 24, 1995; February 2, 2005; and June 28, 2012.  (Tr. 125-26).  These applications were denied at the initial level.  (*Id.*).

2

>Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
>Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
>Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.   Background**

   *1.   Williams' Reports and Testimony*

At the time of the administrative hearing, Williams was fifty years old.[2]  (Tr. 37).  She lived in a two-story house with her son, though she lived on and used only the first floor.  (Tr. 42-43, 148, 150).  Williams went to school until twelfth grade.  (Tr. 60, 131).  In the past, she worked multiple part-time jobs (eight hours a day, four days a week) as a "general laborer."  (Tr.

---

[2] Williams' undated Disability Report says she is 5'6'' and weighs 270 pounds.  (Tr. 130).  Williams' medical records from 2012 confirm these numbers.  (Tr. 270, 276, 300).

3

60, 131). She worked as a telemarketer from April 2011 to June 2011, and later, for a different employer from October 2011 to December 2011. (Tr. 113). Williams stopped working on December 15, 2011 "[b]ecause of [her] condition(s)." (Tr. 130).

Williams alleges disability as a result of various physical and mental conditions. (*Id.*). Her physical conditions include back problems, carpal tunnel, an ulcer, and herpes simplex from a blood transfusion, while her mental conditions include depression, paranoia, and "seeing/hearing things."[3] (Tr. 49, 130). When asked what functions her condition impacts, Williams checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, memory, completing tasks, concentrating, understanding, following instructions, using her hands, and getting along with others. (Tr. 153).

Williams takes several medications, including Tramadol and Naproxen (for back pain), Cyclobenzaprine and Hydrocodone with Acetaminophen (for pain), Ranitidine (or Zantac) and Prilosec (for her ulcer), Acyclovir (for herpes), and aspirin (for her heart).[4] (Tr. 43, 115, 133, 155). According to Williams' testimony during the hearing and in her Function Report, her medications cause side effects, such as cramping, nervousness, anxiety, increased appetite, blurred vision, muscle spasms, drowsiness, headache, and dry mouth. (Tr. 43-44, 155).

Williams testified that her back pain makes bending and using stairs "a problem" and also

---

[3] Because the Court is recommending remand based on the ALJ's failure to evaluate Listing 1.04(A) and the lack of a proper medical opinion in the record as to whether Williams' physical impairments meet or medically equal Listing 1.04(A), the Court will focus its analysis on the evidence and arguments regarding her physical impairments. On remand, however, the ALJ should consider the impact that Williams' mental impairments have on her ability to function in the workplace.

[4] Williams listed some of these medications during the administrative hearing, but at the time, she could not remember them all. (Tr. 43). As a result, this list is compiled from different parts of the record, including her undated Disability Report. Thus, it is unclear during what time frame she was taking some of these medications.

makes it hard to carry things. (Tr. 39, 150). The throbbing in her arm and the numbness in her back affect her sleep. (Tr. 149). She can walk less than half a block before she needs to take a break. (Tr. 39, 153). She can stand for less than five minutes before having to adjust herself. (Tr. 40). When sitting, she "always" has to adjust herself. (*Id.*). She is able to lift five pounds.[5] (Tr. 39). She uses a back brace daily that was prescribed twenty years ago. (Tr. 154).

When asked what she does on a typical day, Williams testified: "I don't do anything." (Tr. 44). She doesn't have the energy to, for instance, go to church or socialize with friends.[6] (Tr. 44, 152). After she wakes up, she "sit[s] on [her] bed and look[s] out the window because [she is] afraid [people are] going to try to break in." (Tr. 149). She has trouble with personal care, for example, dressing, bathing, and doing her hair. (*Id.*). Williams does not take care of other people or pets. (*Id.*). On the contrary, her children take care of her. Williams' daughter does household chores such as grocery shopping, laundry, and vacuuming. (Tr. 42-43). Williams' son cooks for her. (Tr. 44, 150). And they both help her take her medication. (*Id.*). Her son also does the housework and yard work, which Williams is unable to do because of her back. (Tr. 150-51).

Williams only goes outside for doctors' appointments because she is afraid someone will rob her, carjack her, or hurt her. (Tr. 151-52). When she does go outside, she travels by car. (Tr. 151). She is able to drive and go outside alone,[7] but she prefers not to. (*Id.*). Williams is

---

[5] Williams' Function Report from October 27, 2012 says she can lift ten pounds. (Tr. 153). A Function Report filled out by her son on her behalf, and on the same date, also says she can lift up to ten pounds. (Tr. 140).

[6] A Consultative Examination Report by Psychologist Dr. Nick Boneff, Ph.D., dated June 19, 2012, notes that Williams helps with church events and that every other Sunday she is involved with a "Feed the Hungry Program." (Tr. 272).

[7] In her Function Report, Williams responded "Yes" to the following question: "When going

not able to pay bills, count change, or handle a savings account – but she can use a checkbook or money orders. (*Id.*). As for her hobbies or interests, she watches television daily.[8] (Tr. 152). She does not socialize and has problems interacting with others. (Tr. 153). Still, she has never been laid off due to interpersonal issues. (Tr. 154). Williams testified that she only spends time with her son, who lives with her, because she doesn't want people "close to [her]." (Tr. 152).

Williams can concentrate for short periods of time. (Tr. 153). She can "sometimes" finish what she starts, depending on the task. (*Id.*). She is able to follow spoken instructions, as long as they have a simple time frame, or else she "will not remember." (*Id.*). But as for written instructions, she "mess[es] them up a lot." (*Id.*). Williams also indicated that she does not handle stress or changes in routine well. (Tr. 154).

        *3.      Medical Evidence*

The Court has thoroughly reviewed the record and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

        *4.      Vocational Expert's Testimony*

James Fuller testified as an independent vocational expert ("VE"). (Tr. 45-47). The ALJ asked the VE to imagine a hypothetical claimant of Williams' age, education, and work experience, who was limited to light work; would require a sit/stand option; was limited to frequent push/pull hand control activities with the left upper extremity; occasional posturals; no ladders, ropes, or scaffolds; limited to frequent handling and fingering with the left upper extremity; and no concentrated exposure to vibration. (Tr. 45). The ALJ added that the work

---

out, can you go out alone?" (Tr. 151). But on the next page, where it asks, "Do you need someone to accompany you [when you go to places]?", she checked a box that says, "Yes" and wrote, "sometimes." (Tr. 152).

[8] At times, instead of watching television, she watches "out back because people are creeping around [and she doesn't] trust them." (Tr. 152).

should be simple, routine tasks with only occasional changes in the work setting and brief and superficial contact with others. (*Id.*). The VE stated that the hypothetical individual would be capable of working in a limited number of assembly (2,000), packaging (1,000), and inspection (500) jobs due to the sit/stand option, frequent handling (as opposed to continuous), and occasional interaction with others. (Tr. 45-46). Alternatively, the ALJ asked the VE to imagine a claimant with those same restrictions but limited to sedentary work. (Tr. 46). The VE indicated that the same jobs would be available, but the numbers would be reduced by approximately fifty percent. (*Id.*).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Williams is not disabled under the Act. At Step One, the ALJ found that Williams has not engaged in substantial gainful activity since September 21, 2012, the application date.[9] (Tr. 22). At Step Two, the ALJ found that Williams has the following severe impairments: neuropathy left wrist, degenerative lumbosacral disc disease with lumbar radiculopathy, and recurrent symptoms of major depression. (*Id.*). The ALJ found that these recognized impairments result in more than minimal functional limitations. (*Id.*). At Step Three, the ALJ found that Williams' impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 22-23). The ALJ then assessed Williams' residual functional capacity ("RFC"), concluding that she is capable of performing light work with the following limitations: she requires a sit/stand option; no more than occasional push/pull hand control activities with her left upper extremity; no use of ladders, ropes or scaffolds; frequent handling/fingering with her dominant upper right

---

[9] The ALJ pointed out that Williams "worked after the application date but this work activity did not rise to the level of substantial gainful activity ['SGA']." (Tr. 22, 37). Specifically, he found that her "2011 earnings of $4,738.61 from multiple temporary jobs does not meet the earning criteria for SGA." (Tr. 22).

7

extremity; limited to performing simple routine tasks with only occasional changes in work settings; and no more than brief, superficial contact with others. (Tr. 23-27).

At Step Four, the ALJ determined that Williams has no past relevant work. (Tr. 27). At Step Five, based in part on the VE's testimony, the ALJ concluded that Williams is capable of performing a significant number of jobs that exist in the national economy. (Tr. 27-28). As a result, the ALJ concluded that Williams is not disabled under the Act. (Tr. 28).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility

of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Williams v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In her motion for summary judgment, Williams argues that the ALJ failed to properly evaluate Listing 1.04(A) in her written decision. (Doc. #14 at 14-16). Specifically, Williams points out that the ALJ (1) "never mentions" Listing 1.04(A); and (2) "relies on no medical opinion" in evaluating whether Williams met or equaled Listing 1.04(A).[10] (*Id.* at 14, 16). For

---

[10] Williams also argues that the ALJ erred by determining a RFC that did not accurately portray her physical and mental impairments and substantial treatment. (Doc. #14 at 10-13). In particular, Williams argues that the medical evidence and her impairments are inconsistent with light work. (*Id.* at 11-13). Because the Court is recommending remand due to the ALJ's failure to address Listing 1.04(A) and the lack of a proper medical opinion in the record, the Court need

the reasons set forth below, the Court finds merit to both of these arguments.

> 1. *The ALJ Erred in Failing to Consider Whether Williams Met or Medically Equaled Listing 1.04(A)*

At Step Two, the ALJ found that Williams has the severe physical impairment of degenerative lumbosacral disc disease with lumbar radiculopathy. (Tr. 22). He then proceeded to Step Three and concluded that although this limits her to no prolonged standing or walking, this impairment does not preclude her from performing substantial gainful activity with the restrictions set forth in his decision. (*Id.*). Williams argues that the ALJ's decision should be remanded because it does not mention, let alone analyze, Listing 1.04(A). (Doc. #14 at 14-16).

Williams bears the burden of proving at Step Three that her impairment meets or medically equals a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers*, 582 F.3d at 653, and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. § 416.925(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D) ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation"); *see Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For

---

not address this argument. On remand, however, the ALJ should base the RFC determination on the evidence in the record at that time, including any new medical opinion.

a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.").

Here, to have met the criteria of Listing 1.04(A), Williams had to establish that she suffers from a disorder of the spine (for example, spinal arachnoiditis, spinal stenosis, or degenerative disc disease) along with each of these elements:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A).

In evaluating whether Williams satisfied this burden, the ALJ's decision had to provide "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record" – including whether Williams' degenerative disc disease met or medically equaled Listing 1.04(A). 5 U.S.C. § 557(c)(3)(A). The ALJ failed to comply with this requirement because his decision omitted any mention of Listing 1.04(A). He likewise did not set forth the criteria to meet or medically equal this listing, and he failed to analyze the medical evidence as it relates to this listing. These failures require remand.

Although the Court may "overlook the ALJ's failure to articulate his Step Three findings if the error is harmless in nature," this "harmless error" exception does not apply here. *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 (E.D. Mich. 2012). An error will be deemed harmless where "'concrete factual and medical evidence' is 'apparent in the record' and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not

disabled."[11]  *Id.* at 861 (internal citation omitted) (emphasis in original).  During the course of this review, the Court is not limited to an examination of the ALJ's Step Three analysis.  *See White v. Colvin*, No. 12-11600, 2013 WL 5212629, at *7 (E.D. Mich. Sept. 16, 2013) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).  Rather, it may search the entire decision to evaluate "whether the ALJ would have found Plaintiff not disabled in his Step Three analysis."  *Id.*  Where the Court, based on the record and the ALJ's written decision, is able to answer that question in the affirmative, the ALJ's error is harmless.  If, on the other hand, the evidence is of such a nature that the Court cannot determine how the ALJ would have ruled, the error is not harmless, and the case must be remanded so that the ALJ may evaluate the issue in the first instance.

Here, the record contains sufficient "conflicting" and "inconclusive" evidence to merit remanding the matter to the ALJ for consideration of this issue.  *Rabbers*, 582 F.3d at 657.  Although the Commissioner is correct that a medical record dated June 19, 2012 shows Williams exhibiting normal sensation and reflexes[12] (Doc. #17 at 12) (citing Tr. 264, 268), on October 10, 2011, "a lumbosacral MRI revealed moderate diffuse disc bulging with disc protrusion at L4-L5 with severe spinal stenosis and moderate narrowing of the L4-L5 neural foramina."  (Tr. 192-93).  In addition, two months later, a follow-up EMG of her lower extremities "revealed bilateral nerve root irritation at L4-L5."  (Tr. 194).  Williams' treatment notes reflect that she had lower back and bilateral leg pain.  (Tr. 194, 262).  The pain was aggravated by prolonged standing,

---

[11] As the *M.G.* court noted, the issue is whether the Court can conclude what the ALJ *would have found* had he fully addressed the issue, not what the ALJ *could have found*.  *M.G.*, 861 F. Supp. 2d at 861.

[12] Consultative Examiner Dr. Cynthia Shelby-Lane, M.D., also noted that Williams exhibited "no muscle atrophy," had "fair muscle tone without evidence of flaccidity, spasticity or paralysis," and her sensory functions were "intact to gross testing."  (Tr. 264).

walking, and lifting. (Tr. 227, 262). She had diminished strength, positive (and negative) straight leg tests, and limited range of motion in her lower spine. (Tr. 252-54, 256, 266). She also had paresthesia. (Tr. 264). Williams was diagnosed with degenerative lumbosacral disc disease with spinal stenosis. (Tr. 192-93, 227, 236-38, 241, 243, 245, 254, 258, 260).

The Commissioner argues that degenerative disc disease "usually" improves, but she states this in general terms and without any application to the facts of this particular case. Moreover, a "degenerative" condition is one that can be expected to progressively worsen over time.[13] And there is evidence in the record that at least hints at the possibility that Williams' condition has deteriorated. For instance, her medical record indicates that back surgery was suggested to her,[14] but she didn't have health insurance.[15] (Tr. 262). In addition, Williams' Function Report from October 27, 2012 (after her alleged onset date) indicates that she suffers from backaches and wears a back brace daily.[16] (Tr. 154-55). In this report, Williams also

---

[13] Stedman's Medical Dictionary defines "degeneration" as: "1. Deterioration; passing from a higher to a lower level or type; 2. A worsening of mental, physical, or moral qualities; 3. A retrogressive pathologic change in cells or tissues in consequence of which their functions are often impaired or destroyed; sometimes reversible; necrosis results in the early stages." *Degeneration*, *Stedman's Medical Dictionary* 232730 (database updated Nov. 2014).

[14] While this medical record predates Williams' alleged September 21, 2012 onset date, and there is scarce medical evidence from after that date, this is all the more reason why the ALJ should have obtained a more current medical opinion regarding whether Williams met or medically equaled Listing 1.04(A). *See infra* at 14-17.

[15] That Williams didn't have health insurance also contributes to the "inconclusiveness" of the evidence in the record relating to Listing 1.04(A). The limited medical evidence regarding her condition post-September 21, 2012 may be the result of Williams not having health insurance, rather than because her condition improved, as the Commissioner suggests. (Doc. #17 at 10) (alleging that improvement in Williams' degenerative disc disease "possibly explains why [she] did not seek any treatment for that condition following her application").

[16] Although Williams was prescribed a back brace twenty years ago, without a more recent medical opinion as to her condition, there is no way to know whether her need for a brace increased over time.

13

indicates that her back pain causes difficulties with personal care; doing housework and yard work; standing in long lines; and various movements, for example, lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and climbing stairs. (Tr. 149, 151-53). The Function Report Williams' son filled out on her behalf also indicates that Williams suffers limitations due to her physical condition. (Tr. 144) ("She [is] always in pain so she doesn't do much."). Had the ALJ considered the record evidence in relation to Listing 1.04(A), it is unclear how he would have ruled. Ultimately, remand is required because whether Williams met or medically equaled Listing 1.04(A) is a factual determination for the ALJ to make in the first instance. *See, e.g., Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed Impairment...."); *Bolla v. Comm'r of Soc. Sec.*, No. 11-11008, 2012 WL 884820, at *6 (E.D. Mich. Feb. 3, 2012) (collecting cases); *Garza v. Comm'r of Soc. Sec.*, No. 15-11507, 2016 WL 703038, at *5-7 (E.D. Mich. Jan. 22, 2016).

For the reasons set forth above, the matter should be remanded so that the ALJ can consider whether Williams met or medically equaled Listing 1.04(A).

### 2. *The ALJ Also Erred in Failing to Obtain a Proper Medical Opinion Regarding Equivalency*

This case should also be remanded because the ALJ did not address, and failed to obtain a proper medical opinion regarding, the issue of medical equivalency. "When a claimant has a listed impairment but does not meet the criteria, an ALJ can find that the impairment is 'medically equivalent' to the listing if the claimant has 'other findings related to [the] impairment that are at least of equal medical significance to the required criteria.'" *Thomas v. Comm'r of Soc. Sec.*, No. 12-14758, 2014 WL 688197, at *8 (E.D. Mich. Feb. 21, 2014)

14

(quoting 20 C.F.R. § 416.926(a)). To that end, Social Security regulations mandate "that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996); *see also Retka v. Comm'r of Soc. Sec.*, No. 94-2013, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) (noting that "[g]enerally, the opinion of a medical expert is required before a determination of medical equivalence is made"). This requirement will be satisfied if the record contains Disability Determination and Transmittal Forms, Psychiatric Review Technique Forms, or "various other documents on which medical and psychological consultants may record their findings" that are signed by a state agency medical consultant. SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). But "[m]ost courts in this district agree that, when a SDM [Single Decision Maker] renders the initial denial, a medical opinion on the issue of equivalency is necessary at the administrative hearing stage." *Klump v. Colvin*, No. 14-12428, 2016 WL 2747143, at *3 (E.D. Mich. Apr. 26, 2016).

In this case, the Disability Determination Explanation Form ("DDE") was signed by Christopher Fox, a SDM, and Joe DeLoach, Ph.D. (Tr. 55-61). However, with respect to Williams' physical impairments, neither of them "qualify as expert medical consultants under the regulations, and therefore [their DDE does] not qualify as expert testimony" on the issue of medical equivalency. *Park v. Comm'r of Soc. Sec.*, No. 14-10982, 2015 WL 5697608, at *3 (E.D. Mich. Sept. 29, 2015); *see also* Program Operations Manual System DI § 24510.05 (stating that "SDM-completed forms are not opinion evidence at the appeal levels"); *Thomas*, 2014 WL 688197, at *8 (holding that opinion of state agency psychological consultant regarding claimant's mental impairments "cannot support a conclusion that Plaintiff's impairments were

15

not equivalent to Listing 1.04"); *Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) ("[A] medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated."). Even if it did qualify as expert testimony, the DDE simply mentions Listing 1.04 and fails to evaluate whether Williams' condition medically equals or exceeds this listing. (Tr. 54). Without a medical opinion on the issue of equivalency in the record, the ALJ did not follow SSR 96-9p in making his determination.

The Commissioner counters that the ALJ did not commit reversible error in failing to obtain a medical opinion on equivalence because Williams has not demonstrated that she meets or medically equals every requirement of Listing 1.04(A). (Doc. #17 at 9). In support of this argument, the Commissioner points out that "the record contains no medical evidence from the relevant period showing the severity of [her] physical impairments, much less evidence that would compel the ALJ to find that she met or equaled [Listing 1.04(A)]." (*Id.*). The Commissioner also argues that Williams being diagnosed with a degenerative back condition "does not change things" because, in the Commissioner's view, "things usually get better with degenerative disc disease, not worse." (*Id.* at 10). But the Court explained above why this speculative argument lacks merit, and in addition, that there is sufficient medical evidence in the record such that the Court cannot find harmless error in the ALJ's handling of Listing 1.04(A); it is possible that Williams' condition worsened and that her impairment does, in fact, meet or medically equal Listing 1.04(A). The conflicting and inconclusive evidence in the record should have compelled the ALJ to seek a medical opinion regarding Listing 1.04(A).

In sum, the Commissioner's argument does not overcome the fact that the record contains no proper expert medical opinion concerning whether Williams' physical impairments are

medically equivalent to Listing 1.04(A), and that as a result, the ALJ erred by failing to obtain one. *See e.g. Terry v. Comm'r of Soc. Sec.*, No. 14-12274, 2015 WL 5675746, at *3 (E.D. Mich. Sept. 28, 2015) (ruling that ALJ committed reversible error by "making an equivalency determination at step three without any medical opinion"); *Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 923 (E.D. Mich. 2014) (collecting cases).

While the aforementioned evidence may ultimately not change the outcome of this case, it is at least sufficient to merit a more full and explicit consideration by an appropriate medical expert, whose opinion may then be evaluated and used by the ALJ in deciding whether Williams meets or medically equals Listing 1.04(A). *Klump*, 2016 WL 2747143, at *4 (remanding the case because "[t]his Court lacks the expertise to determine whether this evidence may meet or be equivalent to the criteria for a Listing"). In short, here "the lack of an expert opinion on equivalence with respect to Listing 1.04 is not harmless error because an expert could have found that [Williams'] impairments were equivalent to the listing." *Thomas*, 2014 WL 688197, at *9; *see also Park*, 2015 WL 5697608, at *3 (holding that ALJ's failure to obtain medical expert opinion regarding medical equivalency "prejudiced plaintiff").

For the reasons explained above, the matter should be remanded so that the ALJ can obtain a proper medical opinion with respect to whether Williams' condition medically equals or exceeds Listing 1.04(A).

### III.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's motion for summary judgment **[17]** be **DENIED**, Williams' motion for summary judgment **[14]** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be

**REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: November 8, 2016                               s/David R. Grand
Ann Arbor, Michigan                                   DAVID R. GRAND
                                                      United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 8, 2016.

                                                      s/Eddrey O. Butts
                                                      EDDREY O. BUTTS
                                                      Case Manager